DELORES E. SCHOENHARD, Plaintiff-Appellant-Counterappellee, *v.* CARL B. SCHOENHARD, JR., Defendant-Appellee-Counterappellant.

Second District    No. 78-504

Opinion filed July 18, 1979.

Loren S. Golden, of Schwarz and Golden, of West Dundee, for appellant.

Daniel P. Ernst, of Dubuque, Iowa, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Delores E. Schoenhard, appeals from a judgment which denied her petition to modify custody and alimony provisions of a divorce decree and also denied her petition to vacate the property settlement provisions of the decree brought under section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 72.) The defendant, Carl B. Schoenhard, Jr., cross-appeals from an order denying his petition to terminate alimony.

The parties were married on August 24, 1958, the decree of divorce entered on August 18, 1977. Under the decree the plaintiff was granted custody of one of the parties' two minor children, John Karl, then age 14, and defendant was given custody of Kim Annette, then age 17, and defendant was ordered to pay $200 per month for child support and $100 per month as alimony. The decree also purported to settle all property rights in accordance with a property settlement agreement entered into between the parties. On January 26, 1978, defendant filed a petition seeking to gain custody of John and to terminate support and alimony provisions. On February 1, 1978, the plaintiff filed a petition seeking to obtain custody of Kim, to increase support and alimony and to vacate the property settlement.

The trial court, following an extensive hearing, denied the petitions of both parties and this appeal followed.

We first conclude that the trial court did not err in denying section 72 relief. The section 72 petition alleged that the wife gave up all of her property rights, including her interest in the marital residence, to the husband for $2500 based upon his representation that the marital property was not worth more than the $49,000 owed; but that shortly after the divorce the home was sold by the husband for $62,500. The husband denied the allegations and additionally stated that he was unrepresented at the settlement negotiations while the wife was represented by an attorney, James Vincent.

The evidence adduced at the hearing showed that at the time of the divorce proceedings the defendant had an interest in a number of real properties and businesses; and that some items were not listed in the property settlement agreement. There was testimony on behalf of the wife which placed the value of a 50-percent interest in the real estate, in the Schoenhard Engineering and Surveying Co., and in other assets at approximately $79,000 after deducting various liabilities. But from the husband's computation it could have been determined that the assets exceeded liabilities by only an approximate $4,000 at the time of the settlement. The judge found from the evidence that the defendant had

represented to the plaintiff at the time of their negotiations that he had more debts than assets. However, the judge also found that from his view of the evidence that on August 18, 1977, the defendant was in fact insolvent and did not misrepresent his status at the time of the divorce. The judge additionally found, however, that the defendant had inadvertently omitted a certain Lot 169 in Branigar's Apple Canyon Subdivision in Jo Daviess County which was owned by defendant but which was in the name of the daughters of plaintiff's counsel as security for a loan of $7,000 which had been previously made by the attorney to the defendant for the purchase. The court awarded plaintiff an undivided one-half interest in the lot.

In her brief and argument in this court plaintiff contends that her attorney, James Vincent, was in fact a fiduciary in his relationship to her because he had previously made the loan for the purchase of the lot to the defendant and also because his firm had previously represented the defendant's businesses. The defendant answers that there was no real conflict of interest, no showing of prejudice in any event and, further, that the claim had not been made in the trial court and was therefore waived.

■■ We agree that any conflict of interest has been waived since it was not pleaded nor alluded to in the trial court. It is well established that a party will not be permitted to raise a new theory on appeal in order to overturn the trial court's decision. *Snow v. Dixon*, 66 Ill. 2d 443, 453 (1977); *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 148 (1975).

In this case the petitioner alleged in the trial court that greater support was needed for herself and the children and that in the original property settlement agreement the value of the personal residence of the plaintiff and defendant was misrepresented to her by the defendant. No mention was made of the plaintiff's attorney nor of any property in which the attorney allegedly had an interest. We therefore will not consider the effect of a possibility of a conflict of interest which on the record before us appears quite tenuous.

In reviewing the section 72 petition and the record made in its support in the trial court, we conclude that the trial court did not err in denying relief.

■■ The law looks with favor upon amicable settlements of property rights and is reluctant to disturb decrees based thereon. (*Guyton v. Guyton*, 17 Ill. 2d 439, 444-45 (1959).) Where, however, the settlement has resulted from fraud or coercion and is, in fact, inequitable and unfair, relief may be granted. (*James v. James*, 14 Ill. 2d 295, 306 (1958); *Chodl v. Chodl*, 37 Ill. App. 3d 52, 53 (1976).) It has also been observed that a party "may not now be heard to say that she was deceived, if she was, since she had ample opportunity to ascertain the truth." *Lagen v. Lagen*, 14 Ill. App. 3d 74, 81 (1973).

■■ Here, the record shows that the plaintiff had told Vincent that she had previously consulted with another attorney but that she now wanted him to represent her; that Vincent, a friend of both parties, urged the plaintiff to return to the other attorney but that plaintiff refused and Vincent then agreed to represent plaintiff while defendant acted without counsel. Vincent testified that plaintiff informed him that she wanted the proceedings completed by Friday, August 19, because she had to be in Libertyville on Monday, August 22 to start a new job; he instructed both parties to go home that evening, Wednesday, August 17, and work out a property settlement, cautioning them to fully disclose to each other the extent of their properties. The record further shows that the parties returned to Vincent's office on Thursday, August 18, with an agreement, the terms of which were incorporated in the decree. The trial court also found that the plaintiff was well aware of the defendant's earning capacity at the time she entered into the settlement agreement, having been in the marriage for over 19 years. Plaintiff also testified that she was generally familiar with the various ventures in which her husband was engaged. On this record the trial court was justified in finding that the plaintiff did not satisfy her burden of showing by clear and convincing evidence that defendant knowingly concealed material facts at the time of the property settlement agreement of which she was not aware and that the concealment injured her. *Roth v. Roth*, 45 Ill. 2d 19, 23 (1970); *Lagen v. Lagen*, 14 Ill. App. 3d 74, 79 (1973).

■■ We also conclude that the record does not show an abuse of the trial court's discretion in refusing to increase alimony to be awarded the wife. The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 801(c)) properly applied since the new law was effective on October 1, 1977, and plaintiff's petition to modify the decree was filed February 6, 1978. We are not persuaded by defendant's argument that the fact that the original decree referred to "permanent" alimony in any way limited the trial court's ability to modify the terms if a substantial change in circumstances had been shown. Section 502(f) of the Illinois Marriage and Dissolution of Marriage Act provides that the parties may limit modification of terms in a separation agreement. (Ill. Rev. Stat. 1977, ch. 40, par. 502(f).) However, "permanent alimony" is subject to modification since it refers to alimony awarded by a final decree of divorce as opposed to that awarded during the pendency of the action. See *Norton v. Norton*, 328 So. 2d 484, 486 (Fla. App. 1976); *Bentz v. Bentz*, 113 Ohio App. 214, 177 N.E.2d 611, 612 (1960).

■■ However, the record fails to show a substantial change in circumstances required to justify a modification of alimony. (Ill. Rev. Stat. 1977, ch. 40, par. 510(a); *Miller v. Miller*, 65 Ill. App. 3d 844, 846 (1978).) The trial court found that the defendant continued to be insolvent

at the time of the hearing on the petition to modify. The record does not show a substantial change in either the husband's earnings or the situation of the wife. The order denying an increase was therefore not against the manifest weight of the evidence and must be sustained.

With reference to the cross-appeal we conclude that the trial court did not err in denying defendant's petition to terminate alimony. The defendant relies on section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 510(b)), which provides for the termination of future maintenance "if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Plaintiff testified that she lives with a man approximately 50 percent of the time; that she has no apartment of her own and lives the other 50 percent of the time with her parents; that when she stays with the man she does the cooking, cleaning and caring for his children and also has sexual relations with him. Plaintiff testified that any money given to her by the man was only in the form of a loan which she is required to pay back. Plaintiff continues to use the name Schoenhard and pays her own bills.

■■ Under these circumstances we cannot say that the trial court's decision not to terminate alimony was against the manifest weight of the evidence. Whether the plaintiff was a "resident" of the man's household, and whether she cohabited with him on a "continuing conjugal basis" are factual determinations. We agree with the reasoning in the recent case of *In re Support of Halford*, 70 Ill. App. 3d 609, 612 (1979):

> "* * * [T]hat it was the intention of our legislature to provide for the termination of an ex-spouse's obligation to pay future maintenance whenever the spouse receiving the maintenance has entered into a husband-wife relationship with another, whether this be by legal or other means."

However, we find *Halford* to be factually distinguishable. Here, the judge could properly conclude that the facts did not prove that plaintiff was a resident of the man's household where she resided on a noncontinuous basis and under circumstances which did not amount to a husband-wife relationship in fact.

The judgment of the trial court is therefore affirmed.

Affirmed.

RECHENMACHER and LINDBERG, JJ., concur.