*In re* MARRIAGE OF FRANCIS M. ROOFE, Petitioner-Appellee, and EDWARD L. ROOFE, Respondent-Appellant.

Third District   No. 82—838

Opinion filed February 16, 1984.

BARRY, J., specially concurring.

Ronald Hanna, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Kirk Bode, of Bernardi & Bode, of Pekin, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The respondent, Edward L. Roofe, appeals from the denial of his petition to modify the maintenance decree entered when the respondent's marriage to petitioner, Francis M. Roofe, was dissolved. The respondent alleged in his petition to modify that the petitioner was residing with a man not her husband. The trial court found that the petitioner was residing in the same household with a man not her husband, but that there was no evidence of a continuing, conjugal relationship as required by statute. The court therefore denied the respondent's petition.

The only evidence introduced at trial was the testimony of petitioner, Francis M. Roofe. Francis testified that she had been residing with Bill Marshall in Marshall's home in Washington, Illinois, since September 27, 1982. Francis had therefore resided with Marshall for approximately six weeks at the time of the hearing on the petition to modify. Francis had known Marshall since January of 1982 and had dated him prior to moving in with him. She acknowledged that she and Marshall had sexual intercourse while living together. Socially, Francis and Marshall went out "occasionally." They had very few visitors.

Marshall was married, but his wife, who had multiple sclerosis for 15 years, had been living in a nursing home for several years. Francis testified that because Marshall was already married, she and Marshall had no plans to marry. Francis stated that if Mrs. Marshall should undergo a miraculous recovery, Mrs. Marshall would have every right to return to her home and husband. However, in response to a question as to whether she and Marshall had discussed marriage, Francis replied: "We've talked about it—not as long as his wife lives." Francis testified that Marshall never promised or agreed to support her. Francis characterized the relationship as temporary.

The 18-year-old daughter of Francis and the respondent also lived in Marshall's home. Francis testified that she moved in with Marshall so that her daughter would have someone to supervise her while Francis was working the night shift. She stated that when left alone, her daughter would "get into trouble."

After moving in with Marshall, Francis paid half of the monthly mortgage on Marshall's home, half of the utility bills, and half of the costs of groceries. Francis and Marshall each owned their own automobiles. Francis and Marshall each maintained separate bank accounts. There was no evidence of commingling of funds, other than shared expenses. However, Francis had not deposited her paychecks into her checking account since August 1982. At the time of the hearing, Marshall was on strike at Caterpillar Company.

Francis owned a home located in East Peoria, Illinois. Although she used this address as her mailing address, she rented the home to her oldest daughter and the daughter's family for an amount equivalent to the mortgage payment. All utilities were in the name of the oldest daughter. Francis would stop at the house three or four times a week. Some furniture belonging to Francis remained in the house.

The majority of Francis' furniture was moved into Marshall's home. Much of Marshall's furniture was therefore moved to the basement. Francis' personal belongings, such as photo albums, were also moved into Marshall's house.

The issue to be resolved is whether the facts set forth above demonstrate cohabitation on a continuing, residential, conjugal basis. Francis' relationship with Marshall is clearly residential and conjugal. The remaining questions are whether the relationship was continuous and constituted cohabitation.

■ ■ Francis asserts that the relationship was not continuous because, at the time of the hearing, she had only resided with Marshall for approximately six weeks. Whether a relationship is continuous cannot be measured in terms of time alone. In *In re Marriage of*

*Clark* (1983), 111 Ill. App. 3d 960, 444 N.E.2d 1369, we held that a relationship which had lasted for four months was not continuous. However, the relationship in *Clark* had been terminated prior to the hearing. It was therefore clear that the relationship was not a permanent one and was of brief duration.

Similarly, the spouse receiving maintenance in *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 404 N.E.2d 469, resided with a man not her husband for 4½ months. The court found that the relationship was not continuous. The court noted, however, that Mrs. Bramson intended to return to the marital home when her turn to occupy the home was due. Therefore, even if one assumed that the system whereby Mrs. Bramson would alternate between one year in the marital home and one year living with her boyfriend would continue, Mrs. Bramson would live with her boyfriend only 50% of the time.

The cases cited by Francis are distinguishable from the instant case. Francis testified that her residence with Marshall was only temporary. However, the facts of the case do not support that conclusion. Francis rented her home to another of her children. This daughter moved into Francis' house with her family and their belongings. The utilities were then transferred to the daughter's name. These facts demonstrate that Francis was not contemplating returning to live in her house at any point in the near future, despite her visits to the house. Further, Francis moved much of her furniture and personal possessions into Marshall's home. Marshall rearranged his home to incorporate Francis' personal goods into his home. Finally, Francis testified that her relationship with Marshall was such that they had discussed marriage.

The evidence shows that Francis' residence with Marshall was more than a transitory stay in his home. The facts indicate that both Francis and Marshall intended that Francis reside in Marshall's home for an indefinite period of time. The facts further show that there were no significant interruptions in Francis' habitation. While Francis had resided with Marshall for only a short time, there was evidence that the relationship was stable and ongoing, with no termination contemplated. When the facts of the case are analyzed in light of the relationship between Francis and Marshall, it is apparent that their relationship was "continuous" and not at all temporary.

■■ We also find that Francis "cohabited" with Marshall as the term is used in the Illinois Marriage and Dissolution of Marriage Act (hereinafter the Act) (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*). As noted earlier, the courts have construed "cohabitation" to mean a *de facto* husband-wife relationship. Francis contributes one-half of the ex-

penses in the home, including the mortgage payment on Marshall's home. She has made a home there for herself and her daughter. She and her daughter both cook for Marshall. Marshall is providing guidance and supervision for her daughter. Francis and Marshall share the same bed every night. Francis moved a good part of her personal possessions and her furniture into Marshall's house while giving up residence in her own home. Francis dated Marshall before moving in with him. They have subsequently discussed marriage.

The respondent must only establish that a *de facto* husband-wife relationship exists, not that the relationship conforms to the traditional model of marriage or that the relationship is an ideal "marriage." The facts cited above are all indicative of a *de facto* husband-wife relationship and would be sufficient to establish cohabitation. The trial court noted, however, in denying the respondent's petition, that there was no commingling of funds and no joint ownership of property. The court in its order further relied on the fact that the parties could not be legally married.

Contrary to the judgment of the trial court, we find that these factors do not indicate a lack of cohabitation. Instead, they complete a picture of Francis and Marshall developing a relationship as close to that of husband and wife as they are able, given Marshall's commitment to his wife. With no immediate prospect for marriage, Francis and Marshall have developed a *de facto* husband-wife relationship. They are "cohabiting" under the Act.

The respondent argues that it is the conjugal nature of a relationship which is the central aspect of cohabitation and that the Act is meant to further public policy against cohabitation without marriage. The courts of this State have repeatedly held that the legislative intent behind the Act was not an attempt to control public morals. (*In re Marriage of Clark* (1983), 111 Ill. App. 3d 960, 444 N.E.2d 1369.) Instead, the concern underlying the Act was for the recipient's need for support. *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 404 N.E.2d 469.

This does not mean, however, as the petitioner suggests, that an economic analysis of the recipient's need is necessary under the Act. The respondent was required to prove only that the petitioner was cohabiting on a resident, continuing conjugal basis. This he has done.

The judgment of the circuit court of Tazewell County is reversed.

Reversed.

STOUDER, P.J., concurs.

JUSTICE BARRY, specially concurring:

I concur with the result reached by the majority. However, I cannot agree with all of the reasoning therein.

Firstly, I interpret that cohabiting on a resident, continuing conjugal basis might be a cohabitation lesser than one defined as a *de facto* husband and wife relationship. For example, one pursued for a more extended period of time, but wherein sex is impossible or not desired.

Secondly, the legislature in no way indicated by contemporaneous testimony any intention whatsoever upon passage of section 510(b). The historical notes suggest that the third termination event, cohabiting on a resident, continuing conjugal basis is consistent with the public policy of the State of Illinois which is to disfavor the creation of rights which enhance nonmarital relationship, citing *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204. I believe the public policy of this State is to disfavor nonmarital relationships whenever to do so affects the public, even indirectly. For that reason I cannot agree with the recitation by the majority "that the legislative intent behind the Act was not an attempt to control public morals."

Finally, I can find no legislative intent showing that "the concern underlying the Act was for the recipient's need for support." In fact, by adding the subject third terminating factor to section 510(b), in my opinion, the legislature evinced a lack of such concern, or at least a lack of such consideration.