*In re* MARRIAGE OF JUDITH C. ARVIN, Petitioner-Appellee, and ROBERT E. ARVIN, Respondent-Appellant.

Second District   No. 2—88—0149

Opinion filed June 16, 1989.

Eugene L. Shepp and Judith S. Sherwin, both of Shepp & Sherwin, of Chicago, for appellant.

William J. Scott, Jr., of Mirabella & Kincaid, of Wheaton, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Robert Arvin appeals from a circuit court order denying his petition to terminate maintenance payable to his former wife, Judith. Robert makes the following contentions on appeal: (1) that the trial court erroneously concluded that under the terms of the parties' marital settlement agreement, maintenance could only be terminated in the event of death or remarriage; (2) that Judith's conjugal cohabitation with a man on a resident, continuing basis should have resulted in termination; and (3) that Judith's substantial increase in income since the judgment for dissolution justified termination. We affirm.

The circuit court entered a judgment for dissolution of the parties' marriage on May 19, 1978. The judgment incorporates the terms of a marital settlement agreement previously entered into by the parties. With regard to maintenance, the agreement states in relevant part as follows:

> "The husband agrees to pay to the wife as and for maintenance the sum of Two Hundred Dollars ($200.00) per month. The parties agree that the maintenance provided for herein shall be terminable upon the wife's remarriage or upon the wife's death."

The agreement also states that Robert was earning $21,500 per year at the time while Judith was earning $50 per week working part time.

Robert filed his petition to terminate maintenance on June 24, 1987. The circuit court held a hearing on the petition on September 21, 1987. Copies of Judith's Federal tax return for the years 1979-86 were introduced into evidence. The returns showed that Judith's net wages were $11,246 in 1979; $14,815 in 1980; $20,235 in 1981; $24,555 in 1982; $27,921 in 1983; $21,882 in 1984; $23,195 in 1985; and $25,272 in 1986. Judith testified that she was currently earning about $325 per week. In addition, she received $100 per month from renting a room in her house in Seattle. Judith stated that she filed each of her returns for the years 1980-86 between April and September 1987. The returns showed that she was entitled to refunds totalling $7,720 for those years.

Judith testified further that a man named George Hamilton resided in her home from November 1985 until March 1987. He did not pay any rent. Judith attempted to have sexual relations with him on

several occasions between November 1985 and March 1986 but was unable to do so because he was impotent. Judith and Hamilton did not attempt to have sexual relations at any time after March 1986. Hamilton paid her about $100 as a contribution toward an oil bill, but this was the only contribution he made toward household expenses. Judith and Hamilton did not have a joint checking account and did not commingle funds in any manner. They occasionally went out together socially and occasionally slept in the same room. Judith testified that she and Hamilton seldom ate together and she never did his laundry.

The trial judge subsequently issued a letter opinion in which he concluded that Judith had cohabited with George Hamilton on a resident, continuing, conjugal basis, which would ordinarily result in automatic termination of maintenance under section 510(b) of the Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510(b)), which is now section 510(c) of the Act (see Pub. Act 85–1001, §1, eff. July 1, 1988). For purposes of this opinion, we will refer to this provision as section 510(b). The judge concluded, however, that this was not a ground for termination in the present case because the settlement agreement only provides for termination in the event of Judith's death or remarriage. The trial judge also ruled that the maintenance award could not be modified pursuant to section 510(a) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 510(a)) on the basis of Judith's increased income since dissolution because the maintenance award was permanent, not rehabilitative. Robert filed a timely notice of appeal from the denial of his petition.

Robert argues that Judith's cohabitation with George Hamilton on a resident, continuing, conjugal basis should have resulted in termination of his maintenance provision under section 510(b) of the Act. That provision states as follows:

"Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Ill. Rev. Stat. 1987, ch. 40, par. 510(b).)

Judith maintains that the trial court correctly concluded the parties otherwise agreed because their marital settlement agreement states that maintenance shall be terminable upon her death or remarriage and does not mention conjugal cohabitation.

At the time the judgment of dissolution was entered, section 510(b) did not contain the language, "Unless otherwise agreed by the

parties in a written agreement set forth in the judgment or otherwise approved by the court" (see Ill. Rev. Stat. 1977, ch. 40, par. 510(b)). Our supreme court has held, however, that the 1981 amendment adding this language was not intended to change the law but was instead intended to clarify the law. (See *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 533.) Although the marital settlement agreement predated the 1981 amendment to section 510(b), it would have been possible for the parties to supersede the automatic termination provisions of that section.

The case at bar is similar to *In re Marriage of Tucker* (1986), 148 Ill. App. 3d 1097. In *Tucker*, respondent sought termination of maintenance because his former wife was cohabiting with another man on a resident, continuing, conjugal basis. The marital settlement agreement, however, provided that maintenance payments "shall continue until *the first to happen* of the following" and then listed three events: (1) death of the ex-wife; (2) remarriage of the ex-wife; and (3) payment of the 121st installment. The court concluded that this agreement was intended to supersede the statutory termination provision and that conjugal cohabitation was not a basis for termination of maintenance. (Emphasis in original.) *Tucker*, 148 Ill. App. 3d at 1098.

Although the language of the marital settlement agreement is somewhat different in this case, we reach the same conclusion as the court did in *Tucker*. The agreement states that Robert is to pay $200 per month in maintenance, and this obligation is terminable upon Judith's death or remarriage. The omission of conjugal cohabitation as a condition for termination indicates that the parties did not intend to have this statutory condition apply.

■ The normal rules of contract construction apply to marital settlement agreements. (*Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 494.) An interpretation of an agreement which would render some provisions superfluous should be avoided. (*Lukasik v. Riddell, Inc.* (1983), 116 Ill. App. 3d 339, 347.) Under Robert's interpretation, each of the statutory termination conditions in section 510(b) remains effective. This renders the provision of the agreement stating that maintenance is terminable upon Judith's death or remarriage superfluous. The provision only has meaning if it is interpreted in such a manner that Judith's death or remarriage are the only grounds for automatic termination of maintenance. We conclude that under the terms of the agreement, conjugal cohabitation is not a basis for termination.

■ Even if we adopted Robert's interpretation of the agreement, he would not prevail. Robert maintains that Judith may not challenge

the trial court's ruling that she engaged in conjugal cohabitation with George Hamilton because she did not file a cross-appeal. Since Judith obtained by judgment the relief which she asked for in the trial court, denial of the petition to terminate maintenance, she could not have cross-appealed in this case. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386.) Since a judgment may be sustained by a reviewing court upon any ground warranted by the record regardless of whether the trial court relied upon it, an appellee who does not seek modification of the judgment may challenge adverse findings of the trial court without filing a cross-appeal. (*Material Service Corp.*, 98 Ill. 2d at 387.) Judith's contention that the trial court's finding concerning conjugal cohabitation was erroneous is properly before this court.

■ The trial court's finding that Robert would have been entitled to a termination of maintenance because of Judith's conjugal cohabitation with Hamilton were it not for the terms of the marital settlement agreement was manifestly erroneous. The fact that Judith lived with another man would not automatically justify termination of maintenance. (*In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 1018.) The rationale behind statutory termination of maintenance when the recipient spouse cohabits with another on a continuing, resident, conjugal basis is that it addresses the inequity created when that spouse becomes involved in a husband-wife relationship but does not legally formalize it so that he or she can continue receiving maintenance. (*Reeder*, 145 Ill. App. 3d at 1017.) Termination of maintenance on this basis therefore requires a showing that the recipient spouse is involved in a *de facto* husband-wife relationship. 145 Ill. App. 3d at 1017; *In re Marriage of Clark* (1983), 111 Ill. App. 3d 960, 961; *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 662.

■ Robert failed to show that Judith and George Hamilton were involved in a *de facto* husband-wife relationship. In *Bramson*, the court stated as follows:

"Moreover, the legislative intent does not appear to be an attempt to control public morals. *** Rather, an important consideration, divorced from the morality of conduct, is whether the cohabitation has materially affected the recipient spouse's need for support because she either received support from her co-resident or used maintenance monies to support him." (83 Ill. App. 3d at 663.)

Our supreme court has quoted the above language with approval. See *In re Marriage of Sappington* (1985), 106 Ill. 2d 456, 467-68.

In the present case, Judith testified that Hamilton's $100 contri-

bution toward the oil bill was the only contribution he made toward household expenses. The couple did not have a joint checking account and did not commingle funds in any manner. Robert did not present any evidence that Judith's cohabitation with Hamilton affected her need for support in any manner. Robert also failed to present any evidence that Judith used maintenance payments to support Hamilton. Additionally, Judith testified that she and Hamilton seldom ate together, she never did his laundry, and they only occasionally slept in the same bedroom. Under these circumstances, Judith's cohabitation with Hamilton does not justify termination of maintenance under section 510(b) of the Act.

Finally, Robert argues that Judith's increase in income following the 1978 dissolution of their marriage justifies termination of maintenance. In this context, Robert contends that her higher income constitutes a substantial change of circumstances which supports modification of maintenance payments under section 510(a) of the Act from $200 per month to nothing.

Section 510(a) states in relevant part as follows:

"Except as otherwise provided in paragraph (f) of Section 502, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1987, ch. 40, par. 510(a).)

The relevant portion of section 502(f), referred to above, states:

"Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides." Ill. Rev. Stat. 1987, ch. 40, par. 502(f).

We have ruled that the parties intended the provision of their agreement concerning termination of maintenance to supersede section 510(b) of the Act and the grounds for termination set forth therein. The language of the agreement does not expressly preclude or limit modification of the terms of the judgment, however. The specific enumeration of reasons for termination of maintenance in a marital settlement agreement is not sufficient to preclude modification. (*In re Marriage of Martino* (1988), 166 Ill. App. 3d 692, 698.) The terms of the marital settlement agreement did not preclude Robert from seeking modification of maintenance pursuant to section 510(a).

■ The trial court concluded that the maintenance award could not be modified pursuant to section 510(a) because it was an award of

permanent maintenance. There is no language in section 510(a), however, which prohibits modification of a permanent maintenance award. Such awards are therefore modifiable. (*Martino*, 166 Ill. App. 3d at 698; *Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 300.) It is possible that the trial judge confused permanent maintenance with maintenance in gross. Maintenance in gross is a nonmodifiable sum certain to be received by the former spouse regardless of any change of circumstances. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 298.) The award of $200 per month for an indefinite period in the case at bar was not a sum certain, and the award cannot be considered maintenance in gross. Robert was entitled to a modification of the permanent maintenance award if he established that a substantial change of circumstances occurred. *Schoenhard*, 74 Ill. App. 3d at 300.

■■■ The party seeking modification of maintenance has the burden of demonstrating that a substantial change of circumstances has taken place. (*In re Marriage of Chalkley* (1981), 99 Ill. App. 3d 478, 482.) We conclude from our review of the record that Robert failed to meet this burden. In determining whether and to what extent maintenance should be modified, the trial court should consider the same factors which are relevant in making the initial award. (*Chalkley*, 99 Ill. App. 3d at 482.) Section 504 of the Act authorizes the trial court to award maintenance if it finds that the spouse seeking such an award:

"(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income." Ill. Rev. Stat. 1987, ch. 40, par. 504(a).

■■ The reasonable needs of a party as that term is employed in section 504(a)(1) are determined in light of his or her overall circumstances, including the standard of living during the marriage. (*In re Marriage of Holman* (1984), 122 Ill. App. 3d 1001, 1014.) In awarding maintenance, the court should consider the financial resources of the spouse seeking maintenance along with the ability of the other spouse to meet his reasonable needs and the maintenance obligation. *Holman*, 122 Ill. App. 3d at 1014.

■■ Robert presented little evidence at the hearing concerning the factors to be taken into account by the trial court in awarding or modifying maintenance. He presented no evidence concerning his reasonable needs or his ability to continue paying maintenance. The only

evidence concerning Judith's reasonable needs is the recital in the settlement agreement that the Arvin family income at the time of the 1978 dissolution was about $24,000 for a family of four. No evidence was presented concerning the cost of living or Judith's expenses as of 1987.

Judith testified that her current salary was about $325 per week, or about $16,900 per year. In addition, she received $1,200 in rental income, about $450 in dividends, $2,400 in maintenance and, it appears from the record, $2,400 in child support for one child residing with her. Without any evidence concerning Judith's expenses or the cost of living, we cannot say that Judith's estimated income of $20,900 for a family of two, plus $2,400 in child support, would justify modification of maintenance by itself. (See *Pearlman v. Pearlman* (1970), 131 Ill. App. 2d 388, 392 (increase in wife's income insufficient by itself to justify alimony modification).) This is especially true since the family income prior to the 1978 dissolution was about $24,000 per year, a higher sum. Based on the evidence presented at the hearing, a conclusion that Judith could enjoy as high a standard of living as she did during the marriage without maintenance would be sheer speculation.

Robert argues that Judith's late filing of tax returns for 1980-1986 showing that she is entitled to over $7,700 in refunds for this period demonstrates that she is not in need of funds. The record does not reveal, however, why Judith failed to file the returns on time. Moreover, the fact that Judith found it necessary to rent a room in her home for additional income leads to the opposite conclusion. We are not persuaded by Robert's argument. Robert failed to present sufficient evidence at the hearing to justify modification of maintenance under section 510(a).

For the reasons stated above, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.