*In re* MARRIAGE OF ANN CARADONNA, Petitioner-Appellee, and NICHOLAS CARADONNA, Respondent-Appellant.

Second District   No. 2—89—0241

Opinion filed April 25, 1990.

Howard W. Broecker, of Howard W. Broecker & Associates, Ltd., of Geneva, for appellant.

John Panegasser and Daniel J. Kordik, both of Caluwaert, Panegasser, Hancock & Schousen, of Elmhurst, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Nicholas Caradonna, appeals from an order denying his counterpetition to terminate maintenance payments to his former spouse based on her conjugal cohabitation with another man. He contends that the trial court's decision was an abuse of discretion. He also raises an issue concerning whether the court abused its discretion in not allowing him to amend his original petition for termination of maintenance. For the reasons stated below, we affirm.

Nicholas and Ann Caradonna were divorced September 26, 1978. A judgment of dissolution provided that Nicholas would pay Ann $550 per month in maintenance. This maintenance would terminate on the date the youngest child of the parties turned 23, if not earlier terminated by operation of law.

On January 21, 1986, Nicholas petitioned to terminate the maintenance payments. He alleged that the parties' daughter, Lisa, was an adult and their son, 17-year-old Nicholas, resided with his father while the mother lived in Florida. Ann responded that the judgment of dissolution provided that the maintenance agreement was nonmodifiable. The court ruled that the maintenance agreement was modifiable, but in an order filed July 30, 1987, denied with prejudice the petition to terminate or modify maintenance. Nicholas was not present at the hearing of his petition, though he was represented by an attorney.

On August 27, 1987, Nicholas moved to vacate the court's ruling, invoking section 2—1203 of the Code of Civil Procedure (Ill. Rev.

Stat. 1987, ch. 110, par. 2—1203), and alleging that he was absent from the hearing because he had gone to the wrong courtroom in another building. He alleged that, had he been present, he would have presented evidence to show that his wife had been engaged in conjugal cohabitation with another man.

Before this motion was heard, Ann petitioned the court on October 21, 1987, to set a trial date on a petition to increase maintenance and petitioned for a rule to show cause against Nicholas for delinquent payments. On November 3, 1987, Nicholas, under representation of a different attorney, filed a counterpetition to terminate maintenance, alleging that Ann had established a continuing conjugal relationship with Frank Doe in Florida. Ann responded with a motion for involuntary dismissal, contending that the petition alleged no facts which could not have been raised in the first petition to terminate maintenance. Following a hearing in which all the above matters were addressed, the court vacated the ruling denying Nicholas' petition for termination of maintenance and withdrew Ann's motion for voluntary dismissal as being a nonissue. The remaining issues were set for trial.

At the trial, there was confusion from the beginning regarding exactly what issues remained before the court. Ann initially told the court that there were three petitions before it: (1) Ann's petition to increase maintenance; (2) Ann's petition for a rule to show cause; and (3) Nicholas' counterpetition to terminate maintenance. Ann also asserted that, for the first time in his counterpetition, Nicholas was raising the issue of conjugal cohabitation. Nicholas responded that in the original petition he had alleged that Ann was residing at 204 Sweet Gum Way in Florida. (This was the home of Frank Recca, with whom Ann had been living.) The court ruled that the original pleading was insufficient to place in issue whether there was conjugal cohabitation. Nicholas moved to amend the pleadings and stated that his counterpetition was in the nature of an amendment. The court stated it would not allow any amendments, ruling that Nicholas could not attempt to "bootstrap" the allegations in the counterpetition into the original.

Nicholas then stated that the petition before the court was the original January 1986 petition, upon which Ann objected and the court expressed surprise. Ann moved to strike the counterpetition of November 3, 1987, so that there would only be one petition before the court. At this point, the court searched through the file and then stated that Nicholas had filed a counterpetition in November 1987 for termination of maintenance due to Ann's conjugal cohabitation. The court also read from the original 1986 petition in which Nicholas

sought custody of the minor child, termination of maintenance, and support for the minor child, and stated: "So we can go on her testimony on those issues." The court did not rule on Ann's oral motion to strike the November 3 counterpetition.

At trial, Ann testified that she lived at 204 Sweet Gum Way, in Longwood, Florida. The house is owned by Frank Recca, with whom she has operated a travel business since November 1986. She and Frank lived in the house together from February to November 1986, when he moved out. He now lives in the Florida Keys some 400 miles away. They had sexual relations while they lived together until July or August 1986, but have not since then.

While she lived with Frank in his fully furnished house, Frank paid the home expenses, but she paid for all her other expenses, including medical expenses, clothing, groceries, and some support for her daughter. When Frank moved out, she paid him a lump sum check in 1986 of $2,500 for rent, but she did not recall paying rent for the time that they lived together.

She continued to pay him monthly rent of $500 in 1987. Though she stated she paid him monthly, a canceled check showed that she had paid him $3,000 in July 1987, and the check stated that it was for rent from January through June. Since the time Frank left in November 1986, he has returned to stay in the house every couple of months, but they do not share the same bedroom. She has also gone to his house in the Florida Keys two to three times a year. They have also taken between three to five business trips together since November 1986.

Ann first met Frank in 1981 in Jamaica. From this time, the two would occasionally travel together. She went on a trip with him to Honduras in 1984. She saw him six months later and spent a few days at his home in Florida. She took two more trips with him in 1985, one in February and one in September. From September 1984 to September 1985 she saw Frank approximately every six to eight weeks. Between the time she met Frank and the time she moved into his home in 1986, she stayed in his home for more than one day on two or three occasions.

At the conclusion of the evidence, the trial court ruled orally that the evidence did not establish that Ann was cohabiting with Frank in a continuing conjugal relationship. The court denied Nicholas' counterpetition.

Nicholas first contends the court erred when it found Ann was not cohabiting in a continuing conjugal relationship with Frank.

■ Section 510(b) of the Illinois Marriage and Dissolution of Mar-

riage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510(b)) provides:

"Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis."

■■ ■ It has been stated that the most likely reason the legislature added the provision allowing termination of maintenance when there is conjugal cohabitation is that it intended to end the inequities caused when a former spouse had in fact entered into a husband-wife relationship, although not formalized legally, and was still entitled to maintenance merely because Illinois does not recognize common-law marriages. (*In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 1017.) Thus, courts have held that to prove continuing and conjugal cohabitation, a party must show that the former spouse is involved in a *de facto* husband-wife relationship. (*Reeder*, 145 Ill. App. 3d at 1017; *In re Marriage of Arvin* (1989), 184 Ill. App. 3d 644, 649.) This requirement is related to the underlying rationale for maintenance, the need for support by the spouse who is to receive maintenance. (*Reeder*, 145 Ill. App. 3d at 1018; see also *In re Marriage of Sappington* (1985), 106 Ill. 2d 456, 467.) An important consideration is whether the cohabitation has materially affected the recipient spouse's need for support because he or she either received support from the coresident or used maintenance monies to support the coresident. *Arvin*, 184 Ill. App. 3d at 649; *Reeder*, 145 Ill. App. 3d at 1018; *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 663.

■■ A trial court's finding that the recipient spouse is not living with another person under circumstances amounting to a *de facto* husband-wife relationship will not be reversed unless it is contrary to the manifest weight of the evidence. *Reeder*, 145 Ill. App. 3d at 1018.

■■ The evidence clearly shows, contrary to respondent's assertion, that prior to 1986 Ann was not cohabiting with Frank on a resident, continuing conjugal basis. During this time the two lived hundreds of miles apart and only saw each other once every six to eight weeks. As for Ann and Frank's relationship after 1985, specifically during 1986, the facts are closer, though we believe the trial court's decision is not contrary to the manifest weight of the evidence.

It was established that Ann lived with Frank in Frank's fully furnished Florida home from February to November 1986, and they shared a bedroom and had sexual relations until they severed the rela-

tionship sometime in July or August 1986. There is little evidence, however, that Ann's relationship *materially* affected her need for support, which in our view is an important factor in determining whether a *de facto* husband-wife relationship has been established. (See *Arvin*, 184 Ill. App. 3d at 649-50.) Ann testified she paid for all of her own expenses, including medical expenses, clothing, groceries, and some support for her daughter. The only expense she did not pay because of her relationship with Frank was rent for approximately six months. She paid rent for the last six months of 1986 in a lump sum check of $2,500. She shared no personal accounts with Frank. There was no evidence that they had commingled funds. We find these facts insufficient to establish that Ann's relationship materially affected her need for support.

We also find the fact that the relationship was terminated before the hearing and lasted only approximately six months also weighs against finding a *de facto* husband-wife relationship. The short-term nature of the relationship is also further evidence that the relationship did not materially affect Ann's need for support. Two appellate opinions have found no *de facto* husband-wife relationship in cases where the relationship lasted approximately four months. (See *In re Marriage of Clark* (1983), 111 Ill. App. 3d 960; *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657.) The case cited by respondent, *In re Marriage of Roofe* (1984), 122 Ill. App. 3d 56, is distinguishable from the case at bar. In that case, the former spouse had been living with someone for approximately six weeks at the time of the hearing. The court found that the fact the relationship had only lasted six weeks at the time of the hearing did not preclude finding a continual relationship. (*Roofe*, 122 Ill. App. 3d at 58.) The court distinguished *Clark* and *Bramson* because in those cases the former spouses were no longer living with someone else at the time of the hearing. (*Roofe*, 122 Ill. App. 3d at 59.) In *Roofe*, the evidence showed that at the time of the hearing the residential relationship was stable and ongoing with no contemplation of termination. (*Roofe*, 122 Ill. App. 3d at 59.) In our case, we believe the facts clearly show that the relationship was terminated in November 1987. Nor do we find that the living arrangement was terminated merely to make it appear as though the relationship had ended when it had not.

Next, Nicholas argues that the trial court erred in not allowing him to amend his petition of January 1986 to conform to the proofs at trial. Presumably, Nicholas contends that he should have been allowed to amend his original petition to allege conjugal cohabitation. The trial court had ruled at one point that the original petition was insufficient

to allege conjugal cohabitation and that it was too late to attempt to amend the pleadings by bootstrapping the allegations in the counterpetition into the original. Nonetheless, the court proceeded on the allegation of conjugal cohabitation in the counterpetition and ruled on the counterpetition. Since the counterpetition was entertained and ruled upon, we do not understand why the parties or the court made an issue of whether the original petition could be amended. The court had before it at the start of trial an original petition to terminate maintenance which did not allege conjugal cohabitation and a second counterpetition filed in response to a different pleading by Ann in which Nicholas did allege conjugal cohabitation. Since the counterpetition was properly before the court—it had not been dismissed—there was no need to amend the original petition.

■ We find that, regardless of the trial court's statements at the beginning of trial and regardless of all the confusion surrounding the pleadings, Nicholas was allowed to present evidence to prove conjugal cohabitation covering any period since the divorce, and the trial court decided whether Nicholas had proved conjugal cohabitation during the period from the divorce to the date of the hearing. The court's written ruling includes the following findings: (1) the issue presented was whether Ann was cohabiting on a resident, continuing conjugal basis; (2) the evidence demonstrates that Ann is not cohabiting with another on a resident, continuing conjugal basis; (3) the evidence presented in support of Nicholas' counterpetition does not meet the requirements of the statute to prove conjugal cohabitation; (4) that Nicholas' original petition seeking maintenance termination does not allege conjugal cohabitation on a resident continuing basis; and (5) that the evidence established that at the time the original petition was filed, Ann was not living with another on a resident, continuing conjugal basis. The court's order stated that the counterpetition to terminate maintenance is denied. It did not make an order in regard to the original petition.

The court's written order shows that it did not limit the issues of the case to the issues presented by Nicholas' first petition in which he did not allege conjugal cohabitation. It is clear that the entire case involved only the issue of conjugal cohabitation. We cannot explain why the court in one finding focused on the date of the original petition in its ruling. The date is certainly insignificant in light of the counterpetition. We are satisfied that in spite of this finding the court did not limit the issue to whether Nicholas proved the existence of conjugal cohabitation prior to the original pleading. The court's other findings are not limited by a date referring to the original petition, and the

fact that the court's order states that the counterpetition is denied demonstrates that the court considered the entire period from the divorce to the hearing to determine whether conjugal cohabitation on a resident continuing basis had been proved.

We affirm the judgment of the circuit court.

Affirmed.

WOODWARD and GEIGER, JJ., concur.