In re MARRIAGE OF ERMA JEAN LEMING, Petitioner-Appellee, and GARY LEE LEMING, Respondent-Appellant.

Fifth District   No. 5—91—0114

Opinion filed April 13, 1992.

Edward W. Unsell, of Unsell & Unsell, of East Alton, for appellant.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

This is an appeal from an order entered on January 22, 1991, on certain post-trial petitions disposing of a number of issues. Only two of the issues are subject to this appeal, and both deal with construing clauses in a marital settlement agreement entered into by and between the parties and incorporated in the judgment of dissolution of marriage entered on November 3, 1987.

The respondent, Gary, presents the following two issues on appeal:

(1) Whether the ruling of the trial court that respondent was responsible for an additional four months' support for his daughter (Julie), because of post-majority education, was against the manifest weight of the evidence and contrary to the express language of the marital settlement agreement, and

(2) Whether the court's determination that the petitioner's, Erma's, relationship with her boyfriend, Don Wise, did not constitute a resident, continuing conjugal relationship was against the manifest weight of the evidence.

In the trial court's order, it held that Julie spent about four months past her eighteenth birthday as a full-time student and awarded the petitioner an additional four months' child support per the marital settlement agreement. The trial court further held that, considering the totality of the circumstances, the petitioner's relationship with Mr. Wise did not constitute a resident, continuing, conjugal relationship and, accordingly, the respondent was not justified in terminating maintenance.

The marital settlement agreement dated November 2, 1987, upon which the trial court relied, contained the following two provisions relating to the issues raised on appeal.

"3. *CHILD SUPPORT AND RELATED MATTERS*.

C. Said child support shall continue past the minor child's majority if said child elects to attend college on a full-time ba-

sis, and in that event, child support shall terminate when the child becomes 21 years of age.

\* \* \*

6. *MAINTENANCE.*

\*\*\*

B. Husband shall pay the sum of $115.00 per month, due on or before the 25th of each and every month, to Wife as and for maintenance, provided however that this amount shall increase to $215.00 per month on July 16, 1989 and shall continue at said rate until the death of either party, or if Wife remarries or cohabits with another person on a resident, continuing conjugal basis."

The facts concerning Julie's post-majority education are basically not in dispute. Her eighteenth birthday was July 16, 1989. The respondent discontinued support payments as of August 1989. Julie attended Sparks Business College in August 1989 and International Air Academy, Inc., for three months beginning January 1990. Sparks Business College prepares a student to be a court reporter, but after a short time, Julie decided that was not for her and quit. Later, she went to the International Air Academy, Inc., where she received training to work in the airline industry. She completed the course in three months and was gainfully employed in Houston, Texas, at the time of the hearing. The respondent encouraged Julie to attend Sparks and paid for $1,000 tuition to that school. After leaving Sparks, Julie was unemployed and living at home for approximately four months before beginning her training at International Air Academy, Inc.

The trial court ruled that Julie was a full-time student for four months after reaching majority. It is the respondent's contention that the evidence did not show that Julie attended the schools on a full-time basis, and, further, that the International Air Academy, Inc., is not a "college" as that term was contemplated under the marital settlement agreement. Therefore, the respondent asserts the trial court's award of four months' additional post-majority child support pursuant to the marital settlement agreement was against the manifest weight of the evidence and was contrary to the express language of the marital settlement agreement.

The petitioner argues that her petition was for additional post-majority school expenses and was not based on the agreement for additional child support while attending college as a full-time student. Nevertheless, the trial court based its opinion on the agreement and found the petitioner was entitled to four months' additional child sup-

port with certain credits to the respondent. Alternatively, the petitioner maintains that the issue is waived when the respondent paid $1,000 tuition to Sparks Business College, and, if not waived, the respondent acquiesced by his actions in encouraging Julie to attend Sparks College and by paying her tuition. She contends that by paying for Julie's tuition at Sparks, the respondent included Sparks, as well as International Air Academy, Inc., as a college as set forth in the marital settlement agreement. We disagree and believe that *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 536 N.E.2d 946, is dispositive of this issue. The respondent is not obligated for additional post-majority expenses unless they come by virtue of the marital settlement agreement.

    ■ It is clear from the evidence that neither Sparks nor International Air Academy, Inc., is what is commonly or customarily referred to as a college. The agreement in the instant case states "college on a full-time basis." The court in *Holderrieth* held specifically that the phrase "college or professional" school does not include a trade school. The statement in the instant agreement that the respondent pay for additional child support "if said child elects to attend college on a full-time basis" is sufficiently unambiguous, and, as was stated in *Holderrieth*:

> "The parties' intent must be determined from the instrument as a whole and not from any one clause standing alone; meaning and intent must be given every part. No part should be rejected as surplusage unless absolutely necessary, since it is presumed that the parties inserted each provision deliberately and for a purpose. (*White [v. White* (1978)], 62 Ill. App. 3d [375,] 378, 378 N.E.2d [1255,] 1258.) The court cannot place a construction on the instrument that is contrary to or different from the plain and obvious meaning of the language. *Brown v. Miller* (1977), 45 Ill. App. 3d 970, 972, 360 N.E.2d 585, 587." *Holderrieth*, 181 Ill. App. 3d at 202, 536 N.E.2d at 949.

We therefore reverse the trial court as to the allowance of additional child support in the sum of $1,237.95 plus interest.

The issue concerning maintenance and cohabitation developed as a result of a number of pleadings, commencing with a petition to modify the marital settlement agreement filed by the respondent on September 5, 1989. In his petition to modify the marital settlement agreement, the respondent claimed that he should no longer pay maintenance because there had been a substantial change of circumstances. He alleged that the petitioner was now gainfully employed and was no longer in need of maintenance. A motion to dismiss was filed, and on

March 15, 1990, the respondent's petition was dismissed with the court ruling that the maintenance was unmodifiable except on the conditions enumerated in the marital settlement agreement, *i.e.*, death, remarriage or cohabitation. The petitioner on July 10, 1990, filed a petition for rule to show cause in an attempt to collect maintenance, as the respondent had discontinued paying maintenance in January 1990. As a defense to this petition, the respondent raised the argument of cohabitation. On September 24, 1990, the court heard evidence on both the child support question, dealt with heretofore in this opinion, and the issue of maintenance.

The only evidence presented at this hearing was by the parties. Although the respondent testified, the great bulk of the testimony on this issue came from the petitioner. It appears from the evidence that the petitioner left her home in Staunton and moved in with Mr. Don Wise in Carlinville on or about March 17, 1990. She testified she resided in the home of Mr. Wise from March 17, 1990, until July 17, 1990, and, for a time, she was engaged to be married to Mr. Wise. At some time during this period, the petitioner told the respondent she was residing with and was engaged to be married to Mr. Wise. The petitioner further testified that she had moved her furniture into Wise's residence around the first of May. The petitioner had received her mail at her old address in Staunton until May 23, 1990, and after that at Mr. Wise's address. She admitted that she had engaged in a sexual relationship with Wise from March 17 until the latter part of May. The petitioner sold her house in Staunton on a contract that spring and was receiving payments on that contract. The petitioner also stated that she was employed. She paid rent on the house in Staunton for March, April and May, made her car payments and paid her auto insurance. The petitioner paid no rent or utility bill while she lived with Mr. Wise, but she bought some of the groceries during that time. During the latter part of May, the petitioner gave Wise back his engagement ring and decided that they were not going to get married. After this decision, the petitioner moved downstairs in Mr. Wise's home and lived separate and apart until she moved out on July 17, 1990. She further testified that all during the period she lived in Wise's home, she paid her own bills and Mr. Wise paid his, that their funds were never commingled, and that they never purchased any common assets. Further, since July 17, 1990, there was no contact between her and Mr. Wise.

The respondent testified that he learned of the petitioner's engagement in March 1990 and talked to her a couple of times after that, at which time she indicated she was living with Mr. Wise. He

also talked to her in July when she told him she was moving out of Wise's home. The respondent testified that the petitioner stated she knew he did not have to pay maintenance, but she denied any such conversation.

The court after hearing all the evidence made the following ruling on the question of maintenance:

"8) That considering the totality of the circumstances, ERMA JEAN LEMING'S relationship with Mr. Wise does not constitute a 'resident continuing conjugal relationship' as such term is interpreted by the weight of existing case law, and accordingly GARY LEE LEMING is not legally justified in terminating maintenance."

The termination of maintenance based upon a party cohabiting with another person on a resident, continuing, conjugal basis is a factual situation, and a trial court's finding that the recipient spouse is not living with another person under circumstances amounting to a *de facto* husband-wife relationship will not be reversed unless it is contrary to the manifest weight of the evidence. *In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 495 N.E.2d 1383; *Schoenhard v. Schoenhard* (1979), 74 Ill. App. 3d 296, 392 N.E.2d 764.

We find the decision in *In re Marriage of Caradonna* (1990), 197 Ill. App. 3d 155, 159, 553 N.E.2d 1161, 1164, very compelling. In *Caradonna*, the court stated:

"[T]he most likely reason the legislature added the provision allowing termination of maintenance when there is conjugal cohabitation is that it intended to end the inequities caused when a former spouse had in fact entered into a husband-wife relationship, although not formalized legally, and was still entitled to maintenance merely because Illinois does not recognize common-law marriages. (*In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 1017.) Thus, courts have held that to prove continuing and conjugal cohabitation, a party must show that the former spouse is involved in a *de facto* husband-wife relationship. (*Reeder*, 145 Ill. App. 3d at 1017; *In re Marriage of Arvin* (1989), 184 Ill. App. 3d 644, 649.) This requirement is related to the underlying rationale for maintenance, the need for support by the spouse who is to receive maintenance. (*Reeder*, 145 Ill. App. 3d at 1018; see also *In re Marriage of Sappington* (1985), 106 Ill. 2d 456, 467.) An important consideration is whether the cohabitation has materially affected the recipient spouse's need for support because he or she either received support from the coresident or used maintenance monies to support the coresi-

dent. *Arvin*, 184 Ill. App. 3d at 649; *Reeder*, 145 Ill. App. 3d at 1018; *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 663." *In re Marriage of Caradonna* (1990), 197 Ill. App. 3d 155, 159, 553 N.E.2d 1161, 1164.

Although *Caradonna* was decided based on section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510(b)), and the instant case is considered on the agreement of the parties, the provision concerning a conjugal relationship remains the same.

In *Caradonna* the cohabitation lasted six months and was not ongoing at the time of the hearing. In *Caradonna*, as in the instant case, the person who claimed maintenance paid all her personal expenses, and there was little evidence that the relationship affected her need for support, which the court in *Caradonna* stated is an important factor in determining whether a *de facto* husband-wife relationship exists. The fact that the petitioner in this case lived with another man will not automatically justify termination of maintenance. (*In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 495 N.E.2d 1383.) There must be a *de facto* husband and wife relationship demonstrated before the termination of maintenance is proper. (*In re Marriage of Arvin* (1989), 184 Ill. App. 3d 644, 540 N.E.2d 919.) As was stated in *Arvin*:

"In [*In re Marriage of*] *Bramson* [(1980), 83 Ill. App. 3d 657, 404 N.E.2d 469], the court stated as follows:

'Moreover, the legislative intent does not appear to be an attempt to control public morals. *** Rather, an important consideration, divorced from the morality of conduct, is whether the cohabitation has materially affected the recipient spouse's need for support because she either received support from her co-resident or used maintenance monies to support him.' (83 Ill. App. 3d at 663.)

Our supreme court has quoted the above language with approval. See *In re Marriage of Sappington* (1985), 106 Ill. 2d 456, 467-68." *Arvin*, 184 Ill. App. 3d at 649, 540 N.E.2d at 923.

We believe this case can be distinguished from *In re Marriage of Roofe* (1984), 122 Ill. App. 3d 56, 460 N.E.2d 784, a case relied on by the respondent. In *Roofe*, the evidence showed that at the time of the hearing the residential relationship was ongoing and there was no contemplation of termination, while in the instant case the relationship had long since ended.

■ Considering the totality of the evidence in this case, the trial court's decision concerning maintenance was not against the manifest weight of the evidence. The trial court considered the short period of cohabitation, the continuing need for support, the lack of commingling of funds, the petitioner's payment of all her bills with the exception of rent and utilities, and the termination of the relationship and ruled that there was no *de facto* relationship. In the instant case, the petition for termination of maintenance was filed on a different theory, and the issue of cohabitation was brought up only in defense of a show-cause hearing many months after the termination of the maintenance. Further, although we cannot condone the petitioner's living arrangements and may have decided this matter differently had we presided at trial, a reviewing court may not reverse the judgment of the trial court merely because different conclusions could be drawn or if reversal would involve merely a substitution of judgment for that of the trier of fact. *In re Marriage of Reeder* (1986), 145 Ill. App. 3d 1013, 1021, 495 N.E.2d 1383, 1388.

For the reasons set forth above, the trial court's order granting child support in the sum of $1,237.95 is reversed, and its order refusing to terminate maintenance is affirmed.

Reversed in part and affirmed in part.

GOLDENHERSH, P.J., and HARRISON, J., concur.