In *re* MARRIAGE OF MARK A. KLEIN, Petitioner-Appellant, and JONI K. KLEIN, Respondent-Appellee.

Fourth District   No. 4—91—0789

Opinion filed June 29, 1992.

Jack C. Vieley, of Peoria, for appellant.

G. Patrick Riley, of Harrod Law Firm, P.C., of Eureka, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner Mark A. Klein appeals from the Woodford County circuit court's disposition of marital property. He alleges the court erred by (1) awarding maintenance to respondent Joni K. Klein although she was cohabiting; (2) requiring petitioner to pay $1,150 towards respondent's attorney fees; and (3) allocating as debt to petitioner only a $2,000 loan made during the parties' marriage to be used as a down payment on their marital home. We reverse the trial court's maintenance award and remand for further consideration consistent with this ruling.

The parties were married in 1985. No children were born or adopted during their marriage. They were granted a dissolution on January 29, 1991. Hearings on disposition of the marital property

were held on July 29 and August 2, 1991. During the hearings, petitioner testified he was employed as a salesperson by Martin Equipment Company of Illinois located in Goodfield, Illinois. He testified his base pay was $125 weekly plus commission. The dissolution made it difficult for him to work and he could not predict what his future earnings would be. Records submitted by him show his gross pay in 1988 as $51,267.83, in 1989 as $69,203.44, and in 1990 as $50,965.95. His pay stub for the pay period ending July 17, 1991, indicated his year-to-date gross earnings in 1991 were $25,218.31.

Respondent testified she was currently employed by a doctor in Toluca, Illinois, and by Roanoke Apostolic Christian Home in Roanoke, Illinois. Her pay stubs showed her gross income every two weeks was $742. In addition, she testified she earned a maximum of $80 weekly from the home in Roanoke, Illinois. The parties' tax records indicated respondent's gross pay in 1988 was 21,552.43, in 1989 it was $17,057.64, and in 1990 it was $17,195.26.

Respondent's testimony about her current earnings was not precise. She testified she worked 72 hours every two weeks and grossed $742. Her pay stubs indicated the following gross wages: January 23, 1991, $715; March 9, $750; April 6, $752.50; April 20, $697.50; May 4, $732.50; June 29, $682.50; and July 13, $742.50. Respondent also submitted into evidence a pay stub showing her year-to-date gross earnings of $2,415.78 from the Apostolic Christian Home of Roanoke. From this evidence and respondent's testimony, her earnings could not have exceeded $12,755.78 from January 1 through July 13, 1991. This includes her pay stubs submitted into evidence and assumes respondent grossed $752.50 when she worked the maximum hours. The $12,755.78 figure also includes an estimate of $5,267.50 representing earnings from periods *not* covered by the check stubs submitted.

The parties agreed respondent would receive the marital residence subject to the mortgage. Both testified petitioner's parents loaned them $8,000 toward the purchase of their home. They currently owed a balance of $2,000 on this loan. During the hearing, respondent's counsel conceded she was currently cohabiting. The only testimony on this issue was by respondent. She stated that the man she had been dating for approximately eight months sometimes stayed at her home for a week at a time. They had been sexually intimate. He currently stayed at her home regularly. He did not pay respondent a rental fee or for food he consumed while at respondent's home. Respondent explained she paid all expenses because it was her home and cooking for two people costs no more than cooking for one.

After the hearing, the court filed a written property distribution order. The judge assigned the following liabilities to respondent: Mastercard, $3,699 and real estate taxes totalling $1,135.51. A $2,000 loan balance to petitioner's parents for a down payment on the parties' marital home and an outstanding Visa bill of $1,968 were assigned to petitioner as liabilities.

Before awarding monthly rehabilitative maintenance to respondent in the amount of $400 monthly for 52 months, the judge considered petitioner's argument that respondent waived any right to maintenance because she was cohabiting. The judge noted cases submitted by petitioner in support of his argument did not bar future maintenance. Rather, the judge reasoned cohabitation *after* the award of maintenance could extinguish the party's right to maintenance. The judge also ordered petitioner to pay $1,150 of respondent's total attorney fees bill of $2,034.50.

Petitioner first argues because respondent was cohabiting the judge erred by awarding her maintenance. He directs us to section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act), which states the obligation to pay future maintenance terminates "upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Ill. Rev. Stat. 1989, ch. 40, par. 510(c).) Because respondent's counsel conceded that she was cohabiting, petitioner reasons he should not have been directed to pay maintenance.

Requiring him to pay maintenance, he contends, forces him to impliedly support the living expenses of his ex-spouse's lover at the marital home. He directs us to cases in which future maintenance was terminated when the recipient of the maintenance was cohabiting. *In re Marriage of Sappington* (1985) 106 Ill. 2d 456, 467, 478 N.E.2d 376, 381; *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 979, 479 N.E.2d 1152, 1162-63; *In re Marriage of Roofe* (1984), 122 Ill. App. 3d 56, 60, 460 N.E.2d 784, 786; *In re Marriage of Lowe* (1981), 101 Ill. App. 3d 317, 319, 427 N.E.2d 1367, 1369.

Respondent cites *In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 551 N.E.2d 737, for her argument the court did not abuse its discretion in awarding her maintenance. She quotes a statement in *Hart*: "Marital misconduct and morality are not considered. '[T]he standard of living established during the marriage' is a proper consideration." (Emphasis omitted.) (*Hart*, 194 Ill. App. 3d at 851, 551 N.E.2d at 744.) Cohabitation was not at issue in *Hart* and the court's observation does not control this case. Moreover, a determination that main-

tenance should be denied when the party requesting it is cohabiting is not based on the morality of cohabitation.

The propriety of a maintenance award is within the trial court's discretion and should not be disturbed unless the court abused its discretion. (*In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 378, 571 N.E.2d 1135, 1140; *Hart*, 194 Ill. App. 3d at 851, 551 N.E.2d at 744.) Based on statutory interpretation, and for public policy reasons, the trial court's maintenance award to respondent must be reversed.

Respondent concedes if she continued to cohabit after the entry of the court's order, section 510(c) of the Act authorizes termination of her maintenance award. She argues, however, that cohabitation should not be considered in deciding whether to *grant* maintenance because section 504 of the Act, which delineates the factors a court should consider in determining whether maintenance is warranted, does not include as a factor whether the party seeking maintenance is cohabiting. (Ill. Rev. Stat. 1989, ch. 40, par. 504.) Section 504 indicates the factors a court should consider are not limited to those delineated. It states, "after consideration of all relevant factors, including [those delineated]." Ill. Rev. Stat. 1989, ch. 40, par. 504(b).

■■ In addition, section 510(c) delineates when the "obligation to pay future maintenance is terminated." (Ill. Rev. Stat. 1989, ch. 40, par. 510(c).) There should be no distinction between whether petitioner's obligation is terminated before it ripens or after maintenance is ordered. If a party died before maintenance was awarded, or if a party remarried before the award, there would be no reason for awarding maintenance only to then require it to be terminated pursuant to section 510(c). Similarly, if a party who seeks maintenance cohabits before maintenance is awarded, the award should be denied pursuant to section 510(c). Ill. Rev. Stat. 1989, ch. 40, par. 510(c).

Although case law cited by petitioner addresses termination of maintenance when the recipient is found to be cohabiting, cohabiting should not be ignored in determining the propriety of an original maintenance award. To espouse such a view ignores the potential for unnecessary, continuing strains between the parties whose marriage has ended. Although respondent's counsel conceded respondent was cohabiting, if this action disqualifies her for maintenance only if she continues cohabiting, petitioner would be forced to continue to monitor respondent's activities to learn if this status changed. Such contacts between the parties should not be encouraged.

■■ We note that all relationships in which a party seeking or receiving maintenance participates do not constitute a cohabiting relationship which would justify denying or terminating maintenance. (See *In*

*re Marriage of Johnson* (1991), 215 Ill. App. 3d 174, 181-82, 574 N.E.2d 855, 859; *In re Marriage of Caradonna* (1990), 197 Ill. App. 3d 155, 160, 553 N.E.2d 1161, 1165; *In re Marriage of Olson* (1981), 98 Ill. App. 3d 316, 321, 424 N.E.2d 386, 390.) Rather, an important consideration is whether the relationship has materially affected the recipient spouse's need for support because the recipient receives support from her coresident or used maintenance money to support the coresident. *Sappington*, 106 Ill. 2d at 467-68, 478 N.E.2d at 381, quoting *In re Marriage of Bramson* (1980), 83 Ill. App. 3d 657, 663, 404 N.E.2d 469, 473; *Johnson*, 215 Ill. App. 3d at 180, 574 N.E.2d at 858.

However, because respondent's counsel conceded respondent was cohabiting, neither the trial court nor this court had to evaluate whether respondent's relationship amounted to cohabiting which justifies denying her maintenance. We reverse the court's ruling based on the concession that respondent was cohabiting. Maintenance is terminated when the recipient cohabits. It should also not be granted to one who cohabits. To rule otherwise would be inconsistent with the policy of section 510(c).

Petitioner next argues because the evidence showed the parties' year-to-date gross income was equivalent, the trial court erred by ordering him to pay a portion of respondent's attorney fees. He correctly contends a trial court can award attorney fees to one party in a dissolution of marriage proceeding when that party shows he cannot pay his fees and that the other party can afford to do so. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299-300, 483 N.E.2d 1229, 1235; *In re Marriage of Riech* (1991), 208 Ill. App. 3d 301, 312, 566 N.E.2d 826, 832.

Absent an abuse of discretion, the trial court's decision to award attorney fees in a dissolution proceeding should not be overturned. (*Bussey*, 108 Ill. 2d at 299, 483 N.E.2d at 1235; *Riech*, 208 Ill. App. 3d at 312, 566 N.E.2d at 832.) The trial court's award of a portion of attorney fees to respondent was not an abuse of discretion. Despite petitioner's contention, the evidence did not establish the parties' incomes were similar. While petitioner earned at least $50,000 annually during the previous two years, respondent's annual earnings during the same time period was slightly over $17,000.

Moreover, as respondent aptly notes, petitioner's year-to-date earnings for 1991 exceeded $25,000 despite his testimony that the dissolution proceedings made it difficult for him to work. During this same period, respondent's earnings did not exceed $12,755.78. Petitioner attempts to argue that because respondent is cohabiting and thereby spending her money on another person, he should not be required to pay her attorney fees. This does not defeat the fact that petitioner's earnings far exceed respondent's. In light of the significant disparity in the

parties' incomes, the trial court did not abuse its discretion in ordering petitioner to pay a portion of respondent's attorney fees.

■ Petitioner finally argues the trial court erred by assigning to him the $2,000 loan balance owed to his parents for their loan toward the purchase of the marital home. He contends respondent should have had to repay this debt because she received ownership of the marital home. In the alternative, he argues respondent should have been allocated one-half of the remaining balance. He claims a "general rule" exists which requires the party receiving the marital home to take the home subject to all debts associated with it. He provides no support for this "general rule."

Respondent correctly notes the loan was not directly tied to the purchase of the home through a mortgage. She also correctly notes that petitioner attempts to complain about the assignment of one debt and fails to discuss the entire disposition of the marital assets and obligations.

Marital assets and obligations need not be distributed equally, but equitably. A trial court's distribution should not be disturbed absent an abuse of discretion, which occurs only when the trial court exceeded the bounds of reason and ignored judicial principles so that substantial injustice resulted. *In re Marriage of Schroeder* (1991), 215 Ill. App. 3d 156, 162, 574 N.E.2d 834, 838; *In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 75, 507 N.E.2d 900, 908.

Petitioner complains only that the remaining $2,000 of the loan from his parents was assigned to him. He fails to illustrate how this assignment was unjust to him considering the overall property and obligation distribution. The trial court did not abuse its discretion. Moreover, respondent was allocated a larger portion of the marital debt. She was assigned a total of $4,834.51, while petitioner was assigned $3,968, including the $2,000 balance on the loan from his parents. It was reasonable for the trial court to assign that loan to him.

Based on statutory law and public policy, we are compelled to reverse the trial court's maintenance award to respondent. In light of this ruling, we remand this case to the trial court to determine if rulings related to property and debt distributions between the parties should be revisited.

Reversed in part, and remanded.

McCULLOUGH and COOK, JJ., concur.