NOTICE

Decision filed 10/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220079-U

NO. 5-22-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| PATRICIA PRICE, n/k/a Patrick Box, | ) | Madison County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 08-D-314 |
| | ) | |
| PAUL PRICE, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where Paul Price failed to provide factual or legal support for his motion seeking reimbursement of maintenance, the trial court's order denying his motion was not contrary to the manifest weight of the evidence. The trial court's order granting Patricia Price's motion to dismiss Paul's motion for reimbursement of maintenance did not constitute an abuse of the trial court's discretion. We affirm the trial court's judgments.

¶ 2   The respondent, Paul Price, appeals from the trial court's January 10, 2022, order

denying his motion seeking reimbursement of maintenance from Patricia Price n/k/a Patricia Box

1

and granting Patricia's motion to dismiss Paul's motion for reimbursement of maintenance.[1] At issue is whether the trial court's orders were erroneous. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Patricia and Paul were married on August 2, 1997, and were divorced on July 16, 2009. No children were born during the marriage. Patricia's two children from a previous relationship lived in the Price marital home. A marital settlement agreement (MSA) was incorporated into the judgment of dissolution. Pursuant to the terms of the MSA, Paul was ordered to pay Patricia monthly maintenance of $722.22 for a period of 36 months. Paul directly made the maintenance payments to Patricia from August 2009 through April 2010. From May 2010 through June 2012, Paul made the monthly maintenance payments by automatic wage withholding.

¶ 5     On July 6, 2020, Paul filed a motion seeking reimbursement of maintenance payments. Paul alleged that Patricia had "cohabited with Gary Box on a continuing conjugal basis" during the 36 months he paid maintenance. Patricia responded by filing a motion to dismiss Paul's motion on August 6, 2020. Patricia alleged that Paul's motion was inconsistent with section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510(a) (West 2018)). She argued that modification of a maintenance provision only applies to installments accruing after the motion for modification has been filed. Patricia alleged that Paul's motion was improper because all maintenance payments had been made years before he filed this motion. Alternatively, Patricia alleged that Paul's motion was untimely filed pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2018)).

---

[1]Paul is only appealing the trial court's denial of his request for maintenance reimbursement. Other motions presented to the trial court at a hearing held on January 10, 2022, included a motion seeking to vacate the dissolution judgment in part and reallocate the property division based upon "undisclosed" retirement accounts in Patricia's name, a motion to reopen proofs, and a notice of Paul's intent (if proofs were reopened) to pursue a claim of dissipation of marital assets. The trial court denied all of Paul's motions.

2

¶ 6    The case culminated in an evidentiary motion hearing on January 10, 2022. At the conclusion of the hearing, the trial court issued its ruling denying Paul's motion and granting Patricia's motion. The court indicated that its rulings were based upon the testimony of witnesses, the exhibits admitted into evidence at the hearing, and the arguments of counsel. Both Patricia and Paul testified. Two witnesses that Paul intended to call were not present at the hearing. Paul's hired investigator was unable to appear because he had COVID-19. Paul had also intended to call a witness who knew Patricia and her current husband, but the witness had not been subpoenaed and did not appear in court despite numerous attempts to contact him. Paul asked the court to continue the balance of the hearing to present the testimony of these witnesses. The trial court denied the request, stating that the hearing would conclude that date as the case had "been hanging on in the court system for quite some[ ]time and we are going to proceed with the rulings on the various motions today."

¶ 7    Patricia testified that Paul's allegations could have been determined when the divorce was pending. She acknowledged that she met Gary Box in late 2007. Paul's attorney asked Patricia to review copies of Paul's cellular phone bills for January and February 2008. She confirmed that the bills memorialized calls she made to Gary, to Gary's father, and to Gary's daughter. Patricia was also asked to look at a Troy Police Department traffic warning that was issued to her in 2009. The exhibit copy of the police warning was dated August 11, 2017, and listed Patricia's address as 500 Pike Lane in Troy. However, Patricia testified that when the traffic warning was issued, she did not live at the Pike Lane address, but was living at 800B Americana Court in Troy. She further testified that 500 Pike Lane was purchased by Gary Box on March 29, 2010. In support, she identified a copy of the parcel inquiry for 500 Pike Lane that

reflected Gary's March 2010 purchase date. She stated that she and/or Gary had not rented or had any interest in the 500 Pike Lane property before March 2010.

¶ 8    Patricia testified that when she vacated the marital residence, she and her two children moved to the 800B Americana Court rental property. She paid the rent and utilities. She lived in the Americana Court property from July 2008 until July 2010. In support, she identified a letter that was written from the Americana property owner and manager who confirmed that Patricia lived in that property for two years. Upon vacating the rented Americana Court property in July 2010, Patricia moved into Gary's Pike Lane home.

¶ 9    Patricia denied that she lived with Gary Box during the divorce proceedings.

¶ 10   Patricia also acknowledged that she ran a candle sales business from the Americana property, and that her invoices reflected that address as well as the original marital address—114 James.

¶ 11   Paul testified that he paid monthly maintenance to Patricia in the amount of $722.22 for three years after the July 2009 divorce. He also testified about his assumption that Patricia and Gary "were carrying out an affair" at the Americana Court property as early as January 2008. In support, he identified copies of her candle business invoices that predated her July 2008 alleged move-in date to the Americana Court property. On these invoices, Patricia used the Americana Court address as her mailing address. Paul contended that he did not believe that he should have had to pay maintenance if Patricia was living with another man. He testified that he was unaware of the "affair," when he agreed to maintenance, and he would not have agreed to maintenance if he had known "the truth."

¶ 12   Paul acknowledged that he was represented by counsel during the divorce. He admitted that he had the cellular phone bills from early 2008. He admitted that he had no evidence to

4

support his belief that Patricia had access to the Americana Court address earlier than her claimed July 2008 move-in date. Paul's attorney presented him with bank account statements that reflected transactions in May and June 2008 in Eddyville, Kentucky, Donaldson, Tennessee, and Nashville, Tennessee. Paul testified that he believed these Kentucky and Tennessee charges were made by Patricia in furtherance of her affair. However, he also acknowledged that Patricia's mother lived in Tennessee. Paul testified that he did not remember his interrogatory answer in which he stated that these out-of-state charges were connected to a weekend candle sales seminar that Patricia attended. In addition, Paul testified that his belief that Patricia had engaged in an extramarital affair was not based upon the candle seminar trips she took.

¶ 13   On direct examination, Paul testified that he was unable to aggressively conduct discovery during the divorce because he was working "at least 60 hours a week." He also stated that at the time of the divorce he was in a "dire" financial condition, and he had no extra money to further the investigation.

¶ 14   At the conclusion of the hearing, the trial court verbally entered its rulings. The trial court denied Paul's motion for reimbursement of maintenance and granted Patricia's motion to dismiss Paul's motion. The court stated that it based its rulings upon the testimony of witnesses, exhibits admitted, and arguments of counsel. The court indicated its reasoning on the record. The court stated that Paul's claims were mere allegations and/or conjecture without direct proof. The court also noted that paragraph (O) of the July 2009 MSA indicated that the only rights and obligations of the parties were those included in the MSA. Finally, the court stated that there was no basis in law or fact to support Paul's claims raised so long after the MSA was entered. On January 12, 2022, the trial court entered its written order restating the supporting reasons for its orders.

5

II. ANALYSIS

¶ 16    Paul appeals the trial court's denial of his request for maintenance reimbursement. He raises three issues. First, Paul claims that the trial court's denial of his motion was based upon section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2018)), and that this basis was erroneous because Paul established a genuine issue of material fact disputing any contention that his reimbursement request was time-barred. Second, Paul claims that the trial court abused its discretion by denying his motion "for unspecified reasons," or alternatively, denying his motion based on *laches*. Third, Paul contends that the trial court's denial of his reimbursement request was contrary to the manifest weight of the evidence in that Patricia cohabitated with her future husband during the three years Paul paid Patricia monthly maintenance. Paul also appeals from the trial court's order granting Patricia's motion to dismiss his claim.

¶ 17    Before we begin our analysis, we comment generally upon two of the three issues Paul raises on appeal. We find no evidence that the trial court based its denial on *laches* or some time-related limitation. The trial court referenced the length of time between the entry of the MSA and Paul's motion ("so long after the MSA was entered") in stating that there was no legal or factual basis to support Paul's claims, but the court did not state that the time lapse was an integral part of the court's ruling. Moreover, although Patricia's motion relied in part on section 2-619(a)(5) of the Code of Civil Procedure, which provides a means for the court to involuntarily dismiss a claim if it "was not commenced within the time limited by law" (*id.*), the court's order does not reference this procedural code section. However, if the trial court based its rulings in whole or in part upon the doctrine of *laches* or some statutory time limitation, the appellate court may affirm a trial court's order "on any basis that appears in the record without regard to whether the trial

court relied upon such ground or whether the trial court's rationale was correct." *Gunthorp v. Golan*, 184 Ill. 2d 432, 438 (1998) (citing *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993)); *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1033 (2006). Here, as more fully detailed in this order, the trial court found that there was a lack of evidentiary support for Paul's request for reimbursement of maintenance.

¶ 18    Despite the legal presentation of Paul's issues in this appeal, the legal foundation for Paul's maintenance reimbursement claim involves his contention that Patricia received maintenance payments while she "cohabited with Gary Box on a continuing conjugal basis." Section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) states: "*Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court*, the obligation to pay future maintenance is terminated *** if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Emphasis added.) 750 ILCS 5/510(c) (West 2018). The obligation to pay future maintenance would terminate by operation of law on the date that the court finds that "conjugal cohabitation" began. *Id.*; *In re Marriage of Snow*, 322 Ill. App. 3d 953, 957 (2001). The party who was paying maintenance would be entitled to reimbursement for all payments made after the date that cohabitation began. *Id.*

¶ 19    As contemplated by section 510(c) of the Act, the parties' MSA appears to limit the ability to terminate or modify maintenance. 750 ILCS 5/510(c). "Marital settlement agreements are contracts and, therefore, the rules governing the interpretation of contracts apply." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 71. When the terms of a marital settlement agreement are unambiguous, a reviewing court uses only the plain language of the agreement to determine the parties' intent. *In re Marriage of Culp*, 399 Ill. App. 3d 542, 547 (2010).

Paragraph (O) of the MSA states: "The parties intend that henceforth there shall exist between them only those rights and obligations specifically provided for in this Marital Settlement Agreement." Our legislature provided parties with the ability to state the means and method by which the MSA terms could be modified by written agreement, as indicated in the italicized legislative language cited in paragraph 18 of this order. *Id.*

¶ 20    Given the express language used by Patricia and Paul in their MSA and the unique factual background in this case, we could analyze whether the clause included in their MSA was intended to preclude termination of maintenance in cohabitation situations. We do not make any findings on this contractual argument. Instead, we conclude that there was a lack of sufficient evidentiary proof to establish that Patricia was cohabitating with Gary Box "on a resident, continuing conjugal basis."

¶ 21    Section 510(c) of the Act was not intended to control public morals. *In re Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40. Instead, the policy behind termination of maintenance when "resident, continuing conjugal" cohabitation exists is to prevent the party receiving maintenance to benefit financially when he or she is essentially in a marriage without the legal formalization. (Internal quotation marks omitted.) *Id.* (quoting *In re Marriage of Herrin*, 262 Ill. App. 3d 573, 576 (1994)). If the trial court finds that the relationship is in essence a marriage, equity would support a conclusion that the party receiving maintenance "has abandoned his or her rights to support from the prior marriage." (Internal quotation marks omitted.) *Id.* (quoting *In re Marriage of Weisbruch*, 304 Ill. App. 3d 99, 105 (1999)). The party who seeks to terminate maintenance has the burden to establish that the person receiving maintenance is cohabiting with another. *Id.* (citing *In re Marriage of Susan*, 367 Ill. App. 3d 926, 937 (2006)).

¶ 22   To establish that Patricia must reimburse Paul for maintenance payments, Paul must prove that Patricia was engaged in a "resident, continuing conjugal" relationship. 750 ILCS 5/510(c). In short, Paul would need to prove that Patricia and Gary Box were involved in a *de facto* marriage or a substitute for a marriage. *Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40; *Marriage of Snow*, 322 Ill. App. 3d at 956. To determine if that burden has been met, courts examine the totality of the circumstances in the case by considering the following factors: "(1) the length of the relationship; (2) the amount of time spent together; (3) the nature of activities engaged in; (4) the interrelation of personal affairs (including finances); (5) whether they vacation together; and (6) whether they spend holidays together." *Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40 (citing *Marriage of Susan*, 367 Ill. App. 3d at 937). This list of factors is not exhaustive as each maintenance termination case is factually distinct. *Id.* (citing *Marriage of Susan*, 367 Ill. App. 3d at 930).

¶ 23   On appeal, we will not reverse a trial court's conclusion regarding termination of maintenance and reimbursement based on the existence of a *de facto* marriage unless that ruling is against the manifest weight of the evidence. *Marriage of Susan*, 367 Ill. App. 3d at 929-30. A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the decision is unreasonable, arbitrary, or not based on the evidence. *Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 40.

¶ 24   We turn to the evidence that was presented at the hearing in support of Paul's claim that Patricia was receiving maintenance payments at a time when she was engaged in a *de facto* marriage with Gary Box. The MSA by which Paul became contractually obligated to pay maintenance for 36 months was entered into in early July 2009. Paul presented evidence at the hearing that he began making the maintenance payments in August 2009.

9

¶ 25    Patricia testified that she became acquainted with Gary Box in late 2007. Paul presented evidence at the hearing establishing that Patricia made numerous phone calls to Gary's phone during the months of January and February 2008. Patricia did not deny that the telephone calls occurred. However, she testified that at the time of these phone calls, she was not having an extramarital affair with Gary, and they were merely friends. Until July 2008, Patricia lived in the marital home. Patricia established that she rented a property at 800B Americana Court in Troy from July 2008 until July 2010. Paul attempted to produce evidence that Patricia lived at the Americana address before July 2008 because she was listing that address as a mailing address, but not the shipping address, for her candle sales business. Paul's claim was effectively defeated by a letter authored by the owner of the Americana property in which he stated that Patricia was his lessee from July 2008 until July 2010. Paul also attempted to establish that Patricia was living with Gary Box by introducing a computer-printed warning ticket Patricia received from the Troy Police Department on October 3, 2009. On the printout, Patricia's address was listed as 500 Pike Lane—a property that was later purchased by Gary. However, later during the hearing, Patricia introduced evidence that Gary did not live at or own 500 Pike Lane until March 29, 2010, and that she did not live at that address on October 3, 2009.

¶ 26    Patricia acknowledged that she moved in with Gary after she moved out of the Americana property in July 2010. The exact date she moved in with Gary was not established. From Patricia's admission, we know that Patricia was cohabiting with Gary for approximately two years during which she received maintenance payments from Paul.

¶ 27    Understanding that Patricia was cohabiting with Paul does not answer the question of whether she was doing so "on a resident, continuing conjugal basis." 750 ILCS 5/510(c). The length of the cohabiting relationship was two years. We turn to the remaining five factors

outlined in *Marriage of Miller*. There was no evidence detailing the amount of time that she and Gary spent together. There was no evidence about the nature of activities in which they engaged. There was no evidence of any interrelation of personal affairs including finances. There was no evidence that they took vacations together, other than possible day trips to cheerleading events or competitions in which the daughters of both Patricia and Gary were participating. There was no evidence of whether they spent holidays together. Admittedly, these factors are not exclusive and are insufficient "to encapsulate the totality of the circumstances in all cases" (see *Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 48). Still, Paul produced no other evidence in support of his claim that Patricia and Gary had a *de facto* marriage.

¶ 28    Cohabitation, without more, does not satisfy the "resident, continuing conjugal basis" test, and thus, would not justify the termination of maintenance. *In re Marriage of Arvin*, 184 Ill. App. 3d 644, 649 (1989) (citing *In re Marriage of Reeder*, 145 Ill. App. 3d 1013, 1018 (1986)). Paul also did not provide any evidence that during the two years Patricia and Gary cohabited, there was "a deeper level of commitment, permanence, and partnership" to the relationship. *Marriage of Miller*, 2015 IL App (2d) 140530, ¶ 51. While eventually Patricia and Gary wed, Paul provided no evidence about the commitment of the couple during those two critical years. We have no evidence that they were engaged or were planning to marry. Paul also provided no evidence to establish that Patricia and Gary were commingling finances. As in *Miller*, there was "[n]o evidence [that] supported the idea that, should one party fall upon hard financial times, the other would step in to keep their respective lifestyles relatively even." *Id.* ¶ 63. Moreover, there was no evidence produced in this case to establish that Patricia and Gary were attempting to hide "the true nature of the relationship" to preserve Patricia's maintenance. See *id.* ¶ 66.

11

¶ 29    Given the lack of evidence to establish that Patricia and Gary had a *de facto* marriage in that they were together on a "resident, continuing conjugal basis" (750 ILCS 5/510(c)), we conclude that the trial court's order denying Paul's request for reimbursement was not contrary to the manifest weight of the evidence. *Marriage of Susan*, 367 Ill. App. 3d at 929-30. We also find that due to the lack of evidence that Patricia and Gary had a *de facto* marriage, the trial court's order granting Patricia's motion to dismiss Paul's maintenance reimbursement request did not constitute an abuse of the court's discretion. See, *e.g.*, *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 31; *Doutt v. Ford Motor Co.*, 276 Ill. App. 3d 785, 789 (1995).

¶ 30    We comment separately on Paul's argument that the trial court abused its discretion by not listing specific reasons for its ruling. Contrary to Paul's claim, the trial court provided specific reasons for its ruling, including the fact that Paul's claims amounted to mere allegations and/or conjecture without direct proof, and that there was no basis in law or fact for his claims.

¶ 31                                III. CONCLUSION

¶ 32    For the reasons stated in this order, we affirm the Madison County circuit court's judgment.


¶ 33    Affirmed.

12